```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HECTOR PASTRANA,                   :    CIVIL ACTION
                                   :    NO. 08-468
        Plaintiff,                 :
                                   :
     v.                            :
                                   :
BERNON LANE, et al.,               :
                                   :
        Defendants.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          FEBRUARY 24, 2012

Before the Court is a motion for final approval of an amended class-action settlement agreement. For the reasons provided, the Court will grant the motion and approve the amended settlement agreement.

I.   BACKGROUND

On January 30, 2008, James Clarke, Antonio Charles, Richard Taylor, Emmett Coleman, and Glenn Anderson ("Plaintiffs") initiated this civil action against Bernon Lane, James Newton, Charles Steiner, Ferdinand Irizarry, Nora Williams, Irene Blackwell, John Curl, Ian Dennis, Andrea Harris, Lenora King, Patricia Jackson, and Coleman Hall[1] ("Defendants").

---

[1]     Coleman Hall is a residential treatment center, owned and operated by Community Education Centers, located in North Philadelphia that serves as a halfway house for pre-released or

Compl. 1, ECF No. 1. Plaintiffs allege that Defendants provided inadequate medical care and access to medical care in violation of their constitutional rights pursuant to 42 U.S.C. §§ 1983, 1988.[2] Id. ¶ 139-42. Plaintiffs seek injunctive and declaratory relief and damages for the individual plaintiffs and the class they represent. Id. ¶¶ 1, 142.

On June 11, 2008, Defendants answered and the parties conducted limited discovery on the issue of class certification. Answer 1, ECF No. 7; Scheduling Order ¶¶ 4-6, June 26, 2008, ECF No. 10.

On June 3, 2009, the Court granted Plaintiff's motion for leave to file an amended complaint that added Vincent Chapolini, Hector Pastrana, and Felix Cruz, as class representative plaintiffs. Order, June 3, 2009, ECF No. 67. The First Amended Complaint is the operative complaint in this action. First Am. Compl. 1, ECF No. 69.

---

paroled inmates from the Pennsylvania Department of Corrections or violators of probation or parole conditions with the Pennsylvania Board of Probation and Parole. Compl. ¶ 9; First Am. Compl. ¶¶ 12, 25.

[2]     Plaintiffs aver that Coleman Hall's deficiencies include: lack of adequate intake screening, lack of medication review upon intake, lack of emergency health coverage by doctors and nurses, lack of transportation for emergency health care, lack of a medically trained director, lack of a functional grievance system, and ability of non-medical staff to override medical professionals' decisions. See Compl. 1-17.

On June 8, 2009, Plaintiff moved for class certification on Plaintiffs' claims for declaratory and injunctive relief. Pls.' Am. Mot. for Class Certification 1, ECF No. 72. On March 31, 2010, the Court granted the motion and certified a class that consists of "all current and future residents of Coleman Hall alleging inadequate access to and provision of medical and mental healthcare." Order, Apr. 1, 2010, ECF No. 96.

On May 16, 2011, the Court severed the remaining individual damages claims into separate cases, but left Hector Pastrana as the named plaintiff and Coleman Hall as the named defendant in the class action.[3] Order 1-2, May 16, 2011, ECF No. 128.

The parties reached a settlement for the class. On July 29, 2011, the Court preliminarily approved the Settlement Agreement and ordered notice to be posted in all housing units at Coleman Hall. Order, July 29, 2011, ECF No. 133. However, on October 14, 2011, the Court denied final approval of the Settlement Agreement because the parties failed to provide information regarding attorneys' fees that were apparently

---

[3] All claims against Bernon Lane, James Newton, Charles Steiner, Ferdinand Irizarry, Nora Williams, Irene Blackwell, Ian Dennis, Andrea Harris, Lenora King, Patricia Jackson, and John Curl have been resolved. Br. in Supp. of Renewed Joint Mot. Seeking Final Approval of Class Action Settlement 4 n.4, ECF No. 143.

negotiated contemporaneously with the individual damages claims. Order 1 n.1, Oct. 14, 2011, ECF No. 140.

On December 22, 2011, the Court preliminarily approved an Amended Settlement Agreement and ordered notice to be posted in all housing units at Coleman Hall. Order, Dec. 22, 2011, ECF No. 142. The Amended Settlement Agreement discloses attorneys' fees for the individual damages claims and the class action claims. Am. Settlement Agreement 8.

The parties now move for final approval of the Amended Settlement Agreement. Br. in Supp. of Renewed Joint Mot. Seeking Final Approval of Class Action Settlement 1. The Court held a second fairness hearing on February 23, 2012.[4]

## II.  LEGAL STANDARD

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."). The following procedures apply to the class action settlement at issue here:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

---

[4] The parties provided adequate notice of the terms of the Amended Settlement Agreement and of the hearing by posting notice at all three housing units at Coleman Hall and by making the Amended Settlement Agreement available for viewing to the Coleman Hall residents.

4

> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Id. At the second fairness hearing, the Court considered whether the Amended Settlement Agreement is "fair, reasonable, and adequate." The purpose of this inquiry is "to protect the unnamed members of the class from unjust or unfair settlements." See Ehrheart v. Verizon Wireless, 609 F.3d 590, 592-93 (3d Cir. 2010). In making this determination, the Court acts as a "fiduciary, guarding the claims and rights of the absent class members." See id. at 593.

In determining whether the Amended Settlement Agreement is fair, reasonable, and adequate, the Court considers at least the following nine factors:

(1) the complexity and duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings;

(4) the risks of establishing liability;

(5)   the risks of establishing damages;

(6)   the risks of maintaining a class action;

(7)   the ability of the defendants to withstand a greater judgment;

(8)   the range of reasonableness of the settlement in light of the best recovery; and

(9)   the range of reasonableness of the settlement in light of all the attendant risks of litigation.

Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Litig.), 148 F.3d 283, 317 (3d Cir. 1998) (quoting Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotation and editorial marks removed)). Whether a settlement is fair under these factors is a discretionary determination committed to the district judge.[5] See, e.g., Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995).

---

[5]   The Court may also consider the following additional non-exclusive factors, commonly referred to as the Prudential factors:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are

**III. DISCUSSION**

Under the Amended Settlement Agreement, Coleman Hall agrees to implement several changes to its policies regarding the class' medical care. Furthermore, the Amended Settlement Agreement discloses the fees received by counsel for the class, which is inclusive of the attorneys' fees incurred for the individual damages claims as well. For the reasons that follow, the Amended Settlement Agreement is fair, reasonable, and adequate. Therefore, the Court will approve the Amended Settlement Agreement.

A. Terms of the Amended Settlement Agreement

The Amended Settlement Agreement is between Plaintiffs and Defendant Coleman Hall. The Amended Settlement Agreement implements the following changes to Coleman Hall's policies.

First, Coleman Hall agrees to implement a policy entitled, "Control of Resident Medications," which concerns the

---

reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential, 148 F.3d at 323. While the Court "must make findings as to each of the nine Girsh factors," the Prudential factors are merely "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." See In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 350 (3d Cir. 2010).

distribution of medications to residents and procedures for new residents.

Second, Coleman Hall agrees to implement a policy entitled, "First Aid and CPR Training," which concerns First Aid and CPR training for staff members and outlines an Emergency Care Plan for residents.

Third, Coleman Hall agrees to implement a policy entitled, "Resident Medical Services," which provides a procedure for residents to obtain medical services outside of Coleman Hall.

Fourth, Coleman Hall agrees to implement the Pennsylvania Department of Corrections Administrative Directive 804 as the Coleman Hall grievance policy, which provides a formalized procedure for residents to file grievances.

Fifth, Coleman Hall agrees to implement a policy requiring staff to conduct a medical screening of incoming residents within twenty-four hours of arrival.

Sixth, Coleman Hall agrees to make two vans available for routine use to transport residents to the emergency room when a resident's complaint does not rise to the level of a 911-type emergency. Coleman Hall staff will operate the vans and provide return transportation.

Seventh, Coleman Hall agrees not to confiscate medications upon a resident's arrival from the State

Correctional Institution, but rather will log the medications and monitor self-administration. Medications for chronic conditions will be kept in Coleman Hall's medicine room or, in some cases, on the resident's person.

Eighth, Coleman Hall agrees to submit to one year of monitoring, which will include internal audits by the Community Education Center and the provision of records to Plaintiffs' counsel. The Amended Settlement Agreement also provides for inspections to be conducted by an agreed-upon consultant every six months for a one-year period. Am. Settlement Agreement 4-8.

Finally, the Amended Settlement Agreement provides that Defendant Coleman Hall shall pay to the Pennsylvania Institutional Law Project a total of $47,500 to fully satisfy all claims for attorneys' fees and costs that might have otherwise been brought by Plaintiffs. Id. at 8. The Second Amended Notice to the Class makes clear that this fee is "inclusive of attorneys' fees for the individual damage claims." Second Am. Notice 4.

  B.   Analysis of the Amended Settlement Agreement

Under the Girsh factors and relevant Prudential factor, the Amended Settlement Agreement is fair, reasonable, and adequate.

1.  <u>The Complexity and Duration of the Litigation</u>

The first <u>Girsh</u> factor weighs in favor of approving the Amended Settlement Agreement. As the parties point out, the complexity of this case arises by nature of the litigation addressing the policies and procedures of the halfway house, Coleman Hall. Furthermore, the parties conducted significant discovery since the case commenced in 2008. Finally, the parties argue that the "transient nature" of the residents at Coleman Hall and the underlying medical care and constitutional issues in the case contribute to its complexity.

2.  <u>The Reaction of the Class to the Settlement</u>

The second <u>Girsh</u> factor weighs in favor of approving settlement because no objections were returned to the Settlement Agreement or the Amended Settlement Agreement.

3.  <u>The Stage of the Proceedings</u>

The third <u>Girsh</u> factor weighs in favor of approving settlement because the parties contend that they have conducted extensive discovery and motions practice and settlement will save the parties of the expense of conducting additional discovery. "The parties must have an 'adequate appreciation of the merits of the case before negotiating.'" <u>In re Prudential</u>,

148 F.3d at 319 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 813 (3d Cir. 1995)).

The parties contend that the Amended Settlement Agreement is informed by the extensive discovery they conducted since the case commenced. Indeed, the parties submitted and responded to and the Court ruled on motions to dismiss, for summary judgment, and for class certification. Finally, the parties aver that more discovery in the form of depositions of the named Plaintiff and Coleman Hall residents and staff would be needed if the case proceeds to trial. Approval of the Amended Settlement Agreement, therefore, would save the expense of trial.

### 4. The Risks of Establishing Liability

The fourth Girsh factor is neutral. This factor, along with the fifth Girsh factor, "survey[s] the possible risks of litigation . . . to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." In re Prudential, 148 F.3d at 319.

The parties contend that Plaintiffs face uncertainty in establishing liability because "access to medical care in a halfway house" is "not as commonly litigated as medical care issues in prisons and jails." Br. in Supp. of Renewed Joint Mot.

11

Seeking Final Approval of Class Action Settlement 14. While the parties may be correct that the issues in this case are not as commonly litigated as prison medical care issues, the conclusion that Plaintiffs face a greater risk here than in establishing liability in any other case does not follow. The parties have not provided a reason why this case presents some special risk of establishing liability that does not run in any civil action in federal court.

The parties further contend that Defendant Coleman Hall faces a risk in that, if Plaintiffs establish liability at trial, the Court would then fashion injunctive relief to remedy the alleged constitutional violations. Under the Amended Settlement Agreement, however, Defendants have "greater control in determining what terms they feel are most appropriate." Id. Of course, Defendants have this interest in any settlement agreement, whether for injunctive relief or damages. Therefore, the fourth Girsh factor does not weigh in favor of or against settlement approval.

5. The Risks of Establishing Damages

The fifth Girsh factor is also neutral because, as the parties contend, Plaintiffs do not seek damages on behalf of the class but instead only seek injunctive relief.

    6. <u>The Risks of Maintaining a Class Action</u>

  The sixth <u>Girsh</u> factor is neutral. Here, there is no apparent reason why the Court may decertify or modify the class at any time during the litigation. As the parties note, the Plaintiff Class is "fluid," that is, residents of Coleman Hall come and go. But it is not apparent how the "fluidity" of the class would affect the risk of maintaining the class throughout the litigation.

    7. <u>The Ability of the Defendants to Withstand a Greater Judgment, the Range of Reasonableness of the Settlement in Light of the Best Recovery, and the Range of Reasonableness of the Settlement in Light of All the Attendant Risks of Litigation</u>

  The seventh, eighth, and ninth <u>Girsh</u> factors are inapplicable here. This action was certified under Rule 23(b)(2) for injunctive relief. As such, these factors, which deal with monetary judgments, are not applicable. <u>See</u> <u>Inmates of the Northumberland Cnty. Prison v. Reish</u>, No. 08-345, 2011 WL 1627951, at *3 (M.D. Pa. Apr. 29, 2011) ("The seventh, eighth, and ninth factors, as articulated in <u>Girsh</u>, deal with monetary judgments and settlement funds, and thus are inappropriately evaluated here [where the class was certified pursuant to Rule 23(b)(2)].").

        8.    The Relevant Prudential Factor

At the first fairness hearing, the Court identified the Prudential factor relating to the reasonableness of attorneys' fees as weighing against approval of the Settlement Agreement. The parties have now fully disclosed the amount of attorneys' fees paid to counsel for Plaintiffs. The $47,500 payment is inclusive of fees incurred from the individual damages claims, which the Court severed from the class action, and the work done on behalf of the class. Counsel for Plaintiffs performed a total of 861.4 hours of work on behalf of the individual and class claims. Br. in Supp. of Renewed Joint Mot. Seeking Final Approval of Class Action Settlement 16. Of that total, 837.2 hours of work related to the class claims. Id. Furthermore, Plaintiffs contend that this fee is far less than the $141,103 they could reasonably seek under the Criminal Justice Act. Id. at 7-8. The fee is reasonable.

Therefore, under the Girsh factors and relevant Prudential factor, the Amended Settlement Agreement is fair, reasonable, and adequate.

**IV.  CONCLUSION**

For the reasons provided above, the Court will grant the Renewed Joint Motion Seeking Final Approval of a Class

Action Settlement and approve the Amended Settlement Agreement.

An appropriate order will follow.